# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>SCT PARK PLACE, LLC, )<br>)<br>**Defendant.** ) | Case No.:8:25-cv-3172 |

## COMPLAINT

Plaintiff PNC Bank, National Association ("**PNC Bank**"), through undersigned counsel, brings its Complaint against Defendant SCT Park Place, LLC ("**SCT**"), and alleges:

## PRELIMINARY STATEMENT

1. This action relates to the enforcement of a promissory note secured by first-lien security interest perfected against commercial real estate located at 311 Park Place, Clearwater, Pinellas County, Florida (the "**Property**"). The Property is owned by SCT. Unfortunately, SCT has committed numerous acts of default, including failure to pay the outstanding loan at maturity. SCT's management of the Property is detrimental to its value and PNC Bank seeks to enforce its rights and remedies to protect its collateral position.

## PARTIES

2. PNC Bank is a banking corporation with its primary office located at 300 Fifth Avenue, Pittsburgh, Pennsylvania 15222. PNC Bank is registered to and does business in the State of Florida.

3. Defendant, SCT is a Delaware limited liability company with its principal place of business in 5404 Wisconsin Avenue, Suite 1000, Chevy Chase, Maryland 20815. SCT may be

served with process by and through Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

4. PNC Bank has retained the law firm of Nelson Mullins Riley & Scarborough, LLP to represent it in this action and is obligated to pay a reasonable fee for its services.

## JURISDICTION AND VENUE

5. This Court has diversity subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy is between citizens of separate states and the amount in controversy exceeds $75,000.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the property at issue in this matter is located in Pinellas County, Florida.

## FACTS

7. On or about September 6, 2018, PNC Bank loaned SCT the principal sum of $10,000,000, the terms of which are set forth in that certain Loan Agreement dated as of September 6, 2018, by and between SCT and PNC Bank (the "**Loan Agreement**"). A true and correct copy of the Loan Agreement is attached as Exhibit A and incorporated by reference.

8. SCT executed and delivered that certain Promissory Note (the "**Note**"), payable to PNC Bank in the original principal amount of $10,000,000. A true and correct copy of the Note is attached as Exhibit B and incorporated by reference.

9. The Note is secured by that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing given by SCT, dated as of September 6, 2018 and recorded on September 6, 2018 with the Clerk of Court and Comptroller of Pinellas County, Florida, Instrument Number 2018287181 (the "**Security Instrument**"). A true and correct copy of the Security Instrument is attached as Exhibit C and incorporated by reference.

10. The Note is further secured by that certain Assignment of Leases and Rents given by SCT, dated as of September 6, 2018, and recorded on September 6, 2018 with the Clerk of Court and Comptroller of Pinellas County, Florida, Instrument Number 2018287182 (the "**ALR**"). A true and correct copy of the ALR is attached as Exhibit D and incorporated by reference.

11. SCT entered into that certain Assignment of Agreements Affecting Real Estate dated as of September 6, 2018 (the "**AAARE**"), for the benefit of PNC Bank. A true and correct copy of the AAARE is attached as Exhibit E and incorporated by reference.

12. SCT and PNC Bank entered into that certain First Amendment to Loan Documents, dated as of November 17, 2023 (the "**First Amendment to Loan**" and with Loan Agreement, Note, Security Instrument, ALR and AAARE, the "**Loan Documents**"). A true and correct copy of the First Amendment to Loan is attached as Exhibit F and incorporated by reference.

13. PNC Bank is the current owner and holder of the Loan Documents.

14. Under the Loan Documents, SCT granted PNC Bank a security interest in, among other things, the Property, Land, Improvements, Personal Property, Leases, Rents, Awards, Insurance Proceeds, Assigned Agreements, and Additional Collateral, as those terms are defined in the Loan Documents.

15. The Security Instrument encumbers the Property as a first-priority, perfected lien. The Security Instrument and ALR encumber the Leases and Rents arising from the Property as a first-priority, perfected lien.

**I.   The Unpermitted Transfer Default**

16. Under the terms of the Loan Documents, SCT made certain representations and warranties, certified as true as of September 6, 2018, and surviving throughout the period within which any amount remains owing to PNC Bank under the Loan Documents. Loan Agreement §§ 4.1, 4.2.

17. Section 4.1.35 of the Loan Agreement provides that "[SCT] is not (a) an 'investment company' or a company 'controlled' by an 'investment company,' within the meaning of the Investment Company Act of 1940, as amended; or (b) subject to any other federal or state Law or regulation which purports to restrict or regulate its ability to borrow money as contemplated herein."

18. The Investment Company Act of 1940, 15 U.S.C. §§ 80a, *et seq*. (the "**Act**") defines "control" as "the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company. Any person who owns beneficially, either directly or through one or more controlled companies, more than 25 per centum of the voting securities of a company shall be presumed to control such company." 15 U.S.C. § 80a-2.

19. At the execution of the Loan Documents, SCT covenanted that it would "not change its corporate, partnership or other structure [without] the prior written consent of" PNC Bank. Loan Agreement § 5.28.

20. On or about February 13, 2025, Barings, LLC ("**Barings**") entered into a definitive agreement to acquire SCT's ultimate owner (the "**Acquisition**"). Barings is, in turn, owned by Massachusetts Mutual Life Insurance Company ("**MassMutual**"). Mass Mutual is a unit investment trust, which qualifies as an investment company under the Act.

21. The Acquisition resulted in a change of SCT's corporate structure without the prior written consent of PNC Bank in violation of the Loan Agreement. SCT's organizational chart as of the date of the Loan closing is attached as Exhibit G. SCT's organizational chart following the Acquisition is attached as Exhibit H.

22. The Loan Agreement defines "Transfer" as, among other things, "any merger or consolidation or the change, removal, resignation or addition of a managing member or non-member manager (or if no managing member, any member) or the Sale or Pledge of the membership interest of a managing member (or if no managing member, any member) or any profits or proceeds relating to such membership interests, or the Sale or Pledge of non-managing membership interests or the creation or issuance of new non-managing membership interests".

23. Under the Loan Agreement, SCT was required to provide a written request for a Transfer at least sixty days prior to the proposed closing date. SCT failed to provide any written request for a transfer ahead of the Acquisition.

24. For the sake of argument, if the Acquisition qualified as a Permitted Transfer under the Loan Agreement, SCT was required to give PNC Bank notice of such Transfer not less than twenty business days prior to the contemplated effective date of such Transfer. SCT failed to provide notice of a transfer ahead of the Acquisition.

25. Section 5.10(g) of the Loan Agreement provides that PNC Bank may request, and SCT shall furnish within 20 business days of such request, detailed information with respect of the operation of the Property and financial affairs of SCT, as may be reasonably requested by PNC Bank. As a result of the Acquisition, on July 15, 2025, PNC Bank sent a notice of default (the "**First Notice of Default**") and requested that SCT provide a financial statement reflecting Property operations and its financial affairs. SCT ignored or refused that request. A true and correct copy of the First Notice of Default is attached as Exhibit I and incorporated by reference.

26. Section 5.33 of the Loan Agreement requires SCT to provide, upon PNC Bank's request, either confirmation of the accuracy of the Certificate of Beneficial Ownership or a new

certificate. On July 15, 2025, PNC Bank requested that SCT provide a new Certificate of Beneficial Ownership. SCT ignored or refused that request.

27. SCT is in default of the Loan Agreements for participating in an unpermitted transfer or, in the alternative, failing to provide notice of a qualifying permitted transfer, and failing to provide requested documentation within the time prescribed by the Loan Agreement.

**II.     Payment Default**

28. The Loan Agreement provides that SCT shall pay the Debt, defined as all outstanding principal under the Loan, together with interest and all other sums on or before October 1, 2025 (the "**Maturity Date**"). Loan Agreement § 2.2.4.

29. SCT failed to pay the Debt on or before the Maturity Date. On November 6, 2025, PNC Bank sent a notice of default (the "**Second Notice of Default**") demanding payment of the Debt in full in the amount of $9,806,856.57 not later than November 13, 2025. A true and correct copy of the Second Notice of Default is attached as Exhibit J and incorporated by reference.

30. SCT failed to pay the Debt by the deadline prescribed in the Second Notice of Default and, as a result, is in default of the Loan Agreement. As a result of SCT's default, PNC Bank has applied the default interest rate to the Loan.

31. The Security Instrument provides that, following an occurrence of an Event of Default, PNC Bank is permitted to take action it deems advisable to protect and enforce its rights, including foreclosure, appointment of a receiver, revoke the license granted to Borrower to collect rents, and otherwise. Security Instrument, § 9.02.

**III.    Waste**

32. The Property sits on a 9.43 acre parcel and consists of a 119,861 square foot office building.    The Property is currently 58% occupied.

33. PNC Bank has been in frequent communication with SCT regarding ongoing vacancy of the Property and the reduction in value of the Property as a result of such vacancy.

34. Upon information and belief, SCT intends to sell the Property and use the proceeds to pay off the Debt. However, the Property, at its current occupancy, will not command a sale price sufficient to pay the Debt.

35. SCT has attracted a potential significant tenant for the entirety of the fourth and fifth floors of the Property to bring total occupancy up to 93% but has refused to fund the tenant improvement allowance ("**TIA**") necessary for the tenant to sign a lease. SCT has demanded that PNC Bank fund the TIA instead.

36. Jones Lang Lasalle ("**JLL**"), a nationally recognized commercial real estate broker, has estimated that the Property would command a price approximately 30% higher if the fourth and fifth floors were leased to that potential tenant.

37. As a result of SCT's refusal to act in the best interest of the Property, the collateral securing PNC Bank's Loan is insufficient to satisfy the Debt, even while SCT continues to collect rent from existing tenants at the Property.

38. SCT's continued refusal to act in the best interest of the Property and either refusal or inability to pay the Debt following maturity has resulted in a situation where the Property is being squandered.

39. PNC Bank seeks an appointment of a receiver in the best interest of all parties to ensure the Property is being operated at its highest and best use for an eventual sale to satisfy SCT's Debt.

## COUNT I – BREACH OF NOTE

40. PNC Bank realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

41. PNC Bank has performed all of its obligations under the Loan Documents.

42. SCT has defaulted under the Loan Documents and has materially breached the Note by failing to pay the Debt in full on the Maturity Date.

43. Although PNC Bank has made demand on SCT, SCT has failed and refused to pay the outstanding balance due under the Note.

44. PNC Bank declares due the full amount due under the Loan Documents.

45. As of November 13, 2025, the outstanding amount due under the Loan is $9,823.964.12, plus attorney's fees, court costs, and all other sums due and payable thereunder. PNC Bank demands judgment against SCT in the amount due under the Loan.

## COUNT II - BREACH OF LOAN AGREEMENT

46. PNC Bank realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

47. The Loan Agreement requires repayment in full of the Debt on or before the Maturity Date as set forth in § 2.2.4 therein. SCT has failed or refused to repay the Debt on or before the Maturity Date and is in default of the Loan Agreement.

48. The Loan Agreement further contains a prohibition against Transfers without PNC Bank's consent, in the event of an unpermitted Transfer, or advance written notice to PNC Bank, in the event of Permitted Transfer.

49. SCT, through the Acquisition, engaged in a Transfer resulting in a change of its corporate structure without notice to or consent from PNC Bank. As a result, SCT is in default of the Loan Agreement.

50. PNC Bank demands a judgment against SCT for the outstanding balance of the Debt, plus accrued interest and recoverable under the Loan Documents including, but not limited to attorneys' fees and costs. PNC Bank further demands that such judgment shall be applied with

full recourse against SCT pursuant to Loan Agreement Sections 11.3(b)(ii) and, as may be applicable, 11.3(b)(iv).

## COUNT III – ACTION TO FORECLOSE ON PROPERTY

51. PNC Bank realleges and incorporates by reference the foregoing Paragraphs of this Complaint as if fully set forth herein.

52. SCT granted PNC Bank a security interest in the Property as evidenced by the Security Instrument.

53. The Property serves as collateral for the obligations under the Note and Loan Agreement.

54. SCT is in default under the Loan Documents, and the defaults have not been cured.

55. By virtue of SCT's default(s) under the Loan Documents, PNC Bank is entitled to foreclose its interest in the Property.

56. PNC Bank seeks a judgment against SCT foreclosing its security interest in the Property and declaring that the Property be sold to satisfy PNC Bank's claim, and if the proceeds of the sale of the Property are insufficient to satisfy the Debt, that a deficiency judgment be entered for the remaining sum.

## COUNT IV – APPOINTMENT OF RECEIVER UNDER FLORIDA COMMON LAW

57. PNC Bank realleges and incorporates by reference the foregoing Paragraphs of this Complaint as if fully set forth herein.

58. Under the Security Instrument, SCT has consented to PNC Bank's right to have a receiver appointed for the Property following the occurrence of an event of default.

59. SCT's failure or refusal to pay the Debt on or before the Maturity Date has resulted in a default under the Loan Documents.

60. SCT's refusal or failure to take steps necessary to operate the Property at its highest and best use has diminished its value to the extent that it is no longer able to satisfy the Debt in a sale.

61. Interest continues to grow on the Debt and SCT continues to refuse to fund TIA for potential tenants that would increase the value of the Property to an extent that a sale would permit SCT to satisfy the Debt, despite continuing to collect rent from existing tenants.

62. A receiver is necessary to take over operations from SCT, collect rent from existing tenants, fund TIA for new tenants, and increase occupancy to a level that a sale with satisfy SCT's Debt.

63. Accordingly, PNC Bank seeks an immediate appointment of a receiver to take over the Property and run it in a manner that would increase value and properly secure the Loan.

### COUNT V – APPOINTMENT OF RECEIVER UNDER UNIFORM COMMERCIAL REAL ESTATE RECEIVERSHIP ACT

64. PNC Bank realleges and incorporates by reference the foregoing Paragraphs of this Complaint as if fully set forth herein.

65. In the alternative, PNC Bank seeks the appointment, pre-judgment, of a receiver under Florida's Uniform Commercial Real Estate Receivership Act, FL Stat § 714 ("**FUCRERA**").

66. PNC Bank, by and through the Loan Documents, has an interest in the Property.

67. The Property is being subjected to waste and diminution in value due to SCT's poor management and subsequent refusal to invest the funds necessary to execute a lease with a significant tenant that would increase occupancy from 58% to 93% and substantially increase the likelihood of a sale that would satisfy the outstanding Debt.

68. Due to SCT's default, the Property is subject to foreclosure and, without a receiver, the collateral securing the Loan is not currently sufficient to satisfy the secured obligation.

69. A receiver is necessary to take over operations of the Property from SCT, invest funds to lease the majority of the space, and position the Property for a sale that would satisfy the outstanding Loan.

WHEREFORE, PNC Bank respectfully demands a judgment against SCT for:

1. Damages of $9,823.964.12, plus attorneys' fees, expenses, and interest that continues to accrue;

2. Foreclosure of the Property; and

3. Appointment of a receiver for the Property under Florida common law or FUCRERA.

Dated: November 18, 2025            Respectfully submitted,

                                                        **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                                                        */s/ Todd Norman*
**TODD K. NORMAN**
Florida Bar No. 0062154
**OLIVIA SHARE MCCLANAHAN**
Florida Bar No. 1010866
390 North Orange Avenue, Suite 1400
Orlando, Florida 32801
Telephone: (407) 669-4200 / Fax: (407) 425-8377
todd.norman@nelsonmullins.com
olivia.mcclanahan@nelsonmullins.com
shawana.watt@nelsonmullins.com
katherine.reynolds@nelsonmullins.com

**SHANE RAMSEY**
(Florida Bar No. 0026842)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1222 Demonbreun St., Ste 1700
Nashville, Tennessee 37203
Telephone: 615-664-5300
Fax: 615-664-5399
shane.ramsey@nelsonmullins.com

*Attorneys for Plaintiff, PNC Bank, National Association*